IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KETURAH WICKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) 1:20CV934 |
| LA'CAR OF N.C., INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant La'Car of N.C., Inc.'s Motion to Dismiss [Doc. #2]. Plaintiff Keturah Wicks asserts various claims against her former employer, La'Car of N.C., Inc. ("La'Car"), including, as are relevant here, retaliation in violation of Title VII of the Civil Rights Act (Third Claim for Relief), conspiracy to interfere with civil rights (Fifth Claim for Relief), and negligent infliction of emotional distress (Sixth Claim for Relief). (See generally Compl. [Doc. #6].) La'Car argues that the Court lacks subject matter jurisdiction over the retaliation claim because Wicks failed to exhaust her remedies and that Wicks failed to state a claim for conspiracy or negligent infliction of emotional distress for which relief can be granted. (See Mot.) For the reasons that follow, the motion is granted.

I.

At times relevant to this action, La'Car owned and operated eight McDonald's restaurants in North Carolina, and its President Charles A. Reid and

Vice President Linda F. Reid were husband and wife. (Compl. ¶¶ 26-27, 31, 33-34.) On May 16, 2018, Mrs. Reid hired Wicks as an Area Supervisor. (Id. ¶ 36.) She was assigned to supervise three stores, Wake Forest, Six Forks, and Youngsville, and perform services at all eight stores such as running and analyzing profit reports, ensuring the cost of labor remained within budget, hiring all managers, and hiring and training the new Area Supervisor. (Id. ¶¶ 40, 42.)

Wicks soon received positive feedback and numerous compliments from the Reids, including praise for her seamless performance during their two-week absence for vacation. (Id. ¶¶ 43-44.) They told her that they planned to groom her to become the next Director to oversee all eight stores and manage the Area Supervisors so the Reids could be more hands-off. (Id. ¶ 45.) In July, she was assigned two additional stores, Eno and Durham #1, and received a $5,000 raise. (Id. ¶¶ 46-47.) At the end of the month, the Reids added the Wakefield store to Wicks's responsibilities and had her work as its interim General Manager. (Id. ¶¶ 52-58.) In early August, after Wicks responded overnight to an issue at the Wakefield store, Ms. Reid told Wicks that her "dedication really means a lot" and that they had "never had a supervisor that cares as much as [Wicks]." (Id. ¶¶ 64-69.)

On August 13, Wicks told Mrs. Reid that she was pregnant. (Id. ¶ 82.) Mrs. Reid responded to the following effect: "I don't think you will be able to handle this job being pregnant. You will be sick and getting big and unable to handle all of the demands. . . . Will you be keeping the baby?" (Id. ¶ 83.) Wicks told Mrs. Reid that

2

she was confident that she could handle the job. (Id.)  After the Reids learned of Wicks's pregnancy, they began criticizing her. (Id. ¶ 89.)  The following day, Mrs. Reid told Wicks she was removing two of the stores from her supervision. (Id. ¶¶ 90-92.)

On August 16, the Fire Marshal returned to the Wake Forest store where he had conducted an inspection in July. (Id. ¶¶ 48, 93.)  Wicks had ordered a replacement grease cup to address an issue identified in July, but when it was determined to be the wrong model, Mr. Reid called Wicks and began yelling at her. (Id. ¶¶ 50, 97.)  He said words to the following effect:  "'You're useless . . . You're incapable of following instructions . . . You don't do anything I tell you to do . . . I'm not sure where you got your experience from but you're not a good supervisor. . . . Keturah, you don't listen to me . . . You can't do anything right.'" (Id. ¶ 98.)  Wicks was distraught, began crying, and hung up when Mr. Reid did not stop yelling at her. (Id. ¶ 99.)  A few minutes later, Mr. Reid called her back and asked her to go to the Wake Forest store, which she did at which time she remedied the three items the Fire Marshal noted during his follow-up, including ordering a new grease cup via overnight shipping. (Id. ¶¶ 100-02.)  Later that day, though, Mr. Reid texted the supervisors, managers, and area supervisors that they were not permitted to order safety equipment via overnight shipping and faced disciplinary action if they did so without prior approval. (Id. ¶ 105.)  On August 19, Wicks saw a posting on Indeed.com for her position, and the following day

3

Mrs. Reid again changed the stores under Wicks's supervision to Wakefield, Wake Forest, and Six Forks. (Id. ¶¶ 109, 111.)

At the monthly management meeting on August 23, the conduct of Wicks and two other employees was discussed. (Id. ¶¶ 112-14.) Wicks apologized for hanging up and for the inspection and explained that the Reids had her working others' jobs at Wakefield and checking on five other stores during her off hours. (Id. ¶ 114.) Mr. Reid did not apologize or otherwise respond. (Id. ¶ 115.) That meeting unexpectedly ran two and a half hours longer than usual, worrying Wicks's husband who was home with their children. (Id. ¶ 116-17.) Because Wicks's phone was visible as she responded to her husband's calls, Mrs. Reid had Wicks tell her husband the meeting was running late. (Id. ¶¶ 118-19.)

The following day, on August 24, 2018, the Reids called Wicks to their home at which time they told her she "wasn't a good fit" and fired her. (Id. ¶¶ 120-22.) Wicks had never been provided written documentation reflecting any failure to meet expectations. (Id. ¶ 123.) The stores she supervised passed health and fire inspections and were profitable; she met or exceeded performance metrics; she controlled total food costs; and she remediated the minor infractions identified by the Fire Marshal at the Wake Forest store. (Id. ¶¶ 124-30.)

II.

Wicks has sued La'Car alleging violations of various state and federal laws. As is relevant here, she alleges retaliation in violation of Title VII, conspiracy to

4

violate her civil rights, and negligent infliction of emotional distress, each of which La'Car moves to dismiss.

A.

As an initial matter, La'Car argues that this Court lacks subject matter jurisdiction over Wicks's retaliation claim because she failed to exhaust her remedies with the EEOC. The United States Supreme Court decided in June 2019 that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." Fort Bend Cty. v. Davis, ___ U.S. ___, 139 S. Ct. 1843, 1851. Therefore, La'Car's motion to dismiss Wick's retaliation claim will be treated as one made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

To survive a motion to dismiss made pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (noting that a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face in the sense that the complaint's factual allegations must allow a court to draw the reasonable inference

5

that the defendant is liable for the misconduct alleged"). However, when a complaint states facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). When evaluating whether the complaint states a claim that is plausible on its face, the facts are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in his favor. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). Nevertheless, "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" and "naked assertions . . . without some further factual enhancement" are insufficient. Twombly, 550 U.S. at 557. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level". Id. at 555.

"While a 12(b)(6) motion focuses on the allegations of the complaint, it is well established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was integral to the complaint and authentic." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 164 (4th Cir. 2016) (internal quotation omitted). A document is not integral to the complaint when the "claims do not turn on, nor are . . . otherwise based on" the document. Id. at 166 (finding that the police incident report was not integral to the complaint where "the complaint included a few quotes from and references to the" report but the claims did not turn on and were not otherwise based on the statements in the report) (citing Chambers v. Time Warner, Inc., 282 F.3d 147,

6

153 (2d Cir. 2002) ("explaining that a document is 'integral to the complaint' 'where the complaint relies heavily upon its terms and effect' (internal quotation marks omitted)"); Smith v. Hogan, 794 F.3d 249, 255 (2d Cir. 2015) ("document with 'no independent legal significance to [plaintiff's] claim' was not integral to the complaint")).

B.

La'Car moves to dismiss Wick's Title VII retaliation claim for failure to exhaust her administrative remedies because she "failed to include in her Charge of Discrimination any reference to retaliation" or "make any reference to retaliation in her Charge Particulars." (Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Br. in Supp.") at 5 [Doc. #9].) In response, Wicks concedes that "that the word 'retaliation' does not appear on [her] EEOC Charge" but argues that "her claim of retaliation is reasonably related to her statements within her Charge." (Resp. in Opp'n to Def.'s Mot. to Dismiss ("Br. in Opp'n") at 5 [Doc. #11].)

The parties do not dispute that Wicks timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on sex. The issue is whether Wicks also sufficiently charged retaliation because "[t]he scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." Jones v. Calbert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (citing Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002)), abrogated on other grounds, Fort Bend Cty., 139 S. Ct. 1843. "Only those discrimination claims stated in the initial charge, those reasonably related to

7

the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Id. (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996)).

Miles v. Dell, Inc., 429 F.3d 480 (4th Cir. 2005), is particularly illustrative here. Miles sued Dell, her former employer, for sex discrimination, pregnancy discrimination, and retaliation in violation of Title VII. Id. at 483. In her EEOC Charge, she checked the box for sex discrimination, but not for retaliation. Id. at 484. She stated in her narrative that her supervisor "Glaze had been hostile to her after finding out she was pregnant, that she complained of Glaze's hostile attitude to Glaze's supervisor, and that, after firing her, Glaze refused to answer her questions about why she was fired, but answered only, 'So, what do you think of me now?'" Id. at 484-85. The Fourth Circuit agreed with the district court that Miles' retaliation claim was not "reasonably related to her EEOC charge such that it would have reasonably been expected to follow from an administrative investigation of that charge." Id. at 491-92. Not only did Glaze's statement "not necessarily imply that Glaze was motivated by a retaliatory impulse", but the narrative did "not state that [Miles] complained to [Glaze's supervisor] about discrimination" or "that Glaze was aware that Miles had complained to his supervisor." Id. at 492. The court found that the charge did "not remotely allege that Glaze retaliated against her because she complained of his discriminatory

8

conduct to his supervisor, and it [did] not otherwise allege facts that would have put Dell or the EEOC on notice that she was charging Dell with retaliation." Id.

La'Car submitted a copy of Wicks's EEOC Charge in support of its motion to dismiss. (Ex. A to Br. in Supp. (Charge No. 433-2018-03375) [Doc. #13].) The Charge may be considered without transforming the motion into one for summary judgment because it is integral to the Complaint. Wicks alleges that she timely filed a Charge with the EEOC (identified as Charge No. 433-2018-03375) and that she exhausted her administrative remedies. (Compl. ¶¶ 13, 16.) She could not have pursued any claim for a violation of Title VII without having done so. Furthermore, although La'Car inadvertently failed to attach the EEOC Charge as Exhibit A to its brief in support of its motion, both parties appear to have assumed La'Car had done so and quoted from it in support of their arguments. And, since La'Car's filing of the exhibit, (see EEOC Charge No. 433-2018-03375 [Doc. #13]), Wicks has not challenged its authenticity.

In her EEOC Charge, Wicks did not check the box for retaliation. Her narrative is as follows:

> I was hired by [La'Car] on May 28, 2018, and last held the position of District Manager. On August 13, 2018, I informed my employer of my pregnancy. On August 17, 2018, Owner Charles Reid threatened my employment because I ordered a piece of equipment to be sent overnight; yet the equipment was required in order to pass fire marshal inspection and keep the store open for business. On August 24, 2018, I was discharged. The reason Mr. Reid gave me for discharge was that I wasn't a good fit. I believe that I have been discriminated against because of my sex (female-pregnancy), in violation of Title VII of the Civil Rights Act of 1964, as amended.

9

(Roman numeral formatting removed.)

Wicks admits that she did not check the box for retaliation but claims that "procedural exactness" is not required and that "EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading", quoting Alvarado v. Board of Trustees of Montgomery Community College, 848 F.2d 457, 460 (4th Cir. 1988). (Br. in Opp'n at 4.) Wicks contends that "it is implicit on [her] [Charge] form that [she] was operating under the belief that she was retaliated against by Defendant." (Id. at 6.) She argues that "[t]he dates appearing in [her] EEOC Charge of discrimination demonstrate the temporal proximity between the date [she] informed Ms. Reid of her pregnancy and the date of [her] discharge; just 11 days." (Id.)

First, Alvarado is distinguishable. That case involved a discrepancy in the entity named in the discrimination charge and the subsequent civil suit. 848 F.2d at 458-60 (discussing the goals of the "naming requirement" and comparing the employer identified in the charge by a non-lawyer "with limited command of the English language" and the defendant named in the subsequent civil suit filed by a lawyer). Next and more important, there is simply no mention of any action in Wicks's EEOC Charge that could support an inference of retaliation. This is made even clearer in light of Miles' failure to allege retaliation in her EEOC Charge which at least came closer to describing some protected activity. From Wicks's brief in opposition, it appears as though she believes her informing Ms. Reid of her pregnancy is protected activity. But an employee engages in protected activity

10

when she opposes action that is unlawful under Title VII or that she reasonably believes is so and when she participates in any manner in an investigation into a violation of Title VII. 42 U.S.C. § 2000e-3(a); Boyer-Liberto v. Fontainebleau Corp. 786 F.3d 264, 282 (4th Cir. 2015). Wicks's informing Ms. Reid of her pregnancy is not protected activity. Instead, Wicks states that within days of telling her employer that she was pregnant, her employment was threatened and she was discharged. At most, this puts the EEOC and La'Car on notice of sex discrimination, not retaliation. Therefore, Wicks cannot be found to have included retaliation in her EEOC charge, and that claim is dismissed.

C.

Next, La'Car moves to dismiss Wicks's civil conspiracy claim because of the doctrine of intracorporate immunity according to which a corporation cannot conspire with itself. (Br. in Supp. at 8-9.) In response, Wicks argues that her claim falls within an exception to that doctrine "when a corporate officer has an 'independent personal stake in achieving the corporation's illegal objective.'" (Br. in Opp'n at 8 (quoting Greenville Publ'g Co. v. Daily Reflector, 496 F.2d 391, 399 (4th Cir. 1974)).) She argues that the Reids' treatment of her after she told Mrs. Reid she was pregnant sufficiently shows they were motivated by personal animus. (Id. at 8-10 (relying on Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 353 (4th Cir. 2013) (citing Hartman v. Bd. of Trustees of Community College Dist. No. 508, 4 F.3d 465, 470 (7th Cir. 1993))).)

11

As an initial matter, it is not clear from the Complaint or the parties' filings whether Wicks has asserted her civil conspiracy claim under North Carolina law, federal law, or both. Wicks cites to and quotes from N.C. Gen. Stat. § 99D-1 in her Complaint, (Compl. ¶¶ 178-79), but both parties rely entirely on federal cases interpreting and applying the doctrine of intracorporate immunity to claims brought under federal law and other states' laws, (Br. in Supp. at 9; Br. in Opp'n at 8-10; Def.'s Reply Br. at 4-6 [Doc. #12]).

Nevertheless, North Carolina courts and the Fourth Circuit Court of Appeals agree that "under the intracorporate immunity doctrine, acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation", ePlus Tech. Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002). See, e.g., Seguro-Suarez ex rel Connette v. Key Risk Ins. Co., 819 S.E.2d 741, 754-55 (N.C. Ct. App. 2018); State ex rel Cooper v. Ridgeway Brands Mfg., LLC, 646 S.E.2d 790, 799 (N.C. Ct. App. 2007); Painter's Mill Grille, LLC, 716 F.3d at 352. And, both jurisdictions recognize the exception on which Wicks relies where the corporate agent "has an independent personal stake in achieving the corporation's illegal objectives", namely financial gain apart from the corporation's, Greenville Publ'g Co., 496 F.2d at 399. See, e.g., State ex rel Cooper, 646 S.E.2d at 799; ePlus Tech., Inc., 313 F.3d at 179-80.

However, such an exception does not apply here. The Reids are not alleged to have an independent financial stake apart from La'Car's in achieving the corporation's alleged illegal objectives, and their alleged personal animus towards

12

Wicks does not fall into the personal stake exception. In Painter's Mill Grille, LLC, a 42 U.S.C. § 1985(3) action, the Fourth Circuit Court of Appeals found that the plaintiffs' argument – that the individual defendants had an independent personal stake because of their personal racial animus – "would 'render[] the intracorporate conspiracy doctrine meaningless' in the context of § 1985(3) claims 'because every claim under that statute depends on a showing that the conspirators shared an invidiously discriminatory motivation.'" 716 F.3d at 345 (quoting Hartman, 4 F.3d at 470).[1]

Furthermore, the Reids are not named as individual defendants. Wicks alleges that all of their discriminatory conduct was connected directly to their work as agents of La'Car in that "Defendant conspired to interfere with [her] civil rights"; "Defendant's agents, Charles and Linda Reid, engaged in the conspiracy by directly perpetrating repeated harassment motivated by Plaintiff's sex"; the Reids' actions "including, but not limited to the discrimination, retaliation, and wrongful discharge of [Wicks], were acts performed by agents of Defendant"; their acts "took place during the hours they were in fact working for Defendant"; "[t]hese acts were related to, or committed in the context of, the conduct these . . . agents were paid to perform"; "[t]he wrongful actions . . . were performed by agents of

---

[1] Wicks relies on Painter's Mill Grille, LLC and its citation to Hartman. (Br. in Opp'n at 8 (". . . [I]n situations where 'corporate employees are shown to have been motivated solely by personal bias,' the intra-corporate immunity doctrine would not apply."). However, her quote from these cases is incomplete and improperly assigns precedential value to conditional dicta from Hartman. Compare id. with Painter's Mill Grille, LLC, 716 F.3d at 353 and Hartman, 4 F.3d at 470.

13

Defendant, in the course of Defendant's business"; and "Defendant is thus liable for its agents' actions under the doctrine of Respondeat Superior." (Compl. ¶¶ 178-80, 192-96.)  In short, the doctrine of intracorporate immunity forecloses Wicks's civil conspiracy claim.

D.

La'Car also challenges Wicks's negligent infliction of emotional distress ("NIED") claim because she alleges intentional, not negligent, conduct and fails to allege any facts to support the element of severe emotional distress. (Br. in Supp. at 10-12.)  Wicks appears to agree that she must allege negligent conduct but argues that she has done just that. (Br. in Opp'n at 11.)  She also contends that she has sufficiently alleged severe emotional distress. (Id. at 11-12.)

A plaintiff asserting a claim for NIED must allege: (1) the defendant engaged in negligent conduct, (2) it was reasonably foreseeable that conduct would cause the plaintiff severe emotional distress, and (3) the conduct did cause the plaintiff severe emotional distress. Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 395 S.E.2d 85, 97 (N.C. 1990).  As the parties recognize, allegations of intentional conduct are not sufficient to support a claim of NIED. E.g., Gauthier v. The Shaw Grp., Inc., No. 3:12-cv-274-GCM, 2012 WL 6043012, at *8 (W.D.N.C. Dec. 4, 2012) (citing Huggins v. N.C. Dep't of Admin., No. 5:10-CV-414-FL, 2011 WL 3917372, at *8 (E.D.N.C. Sept. 2, 2011) ("[A] plaintiff cannot simply restate facts regarding intentional behavior that form the basis for [a claim of intentional conduct] to form a claim for NIED."); Springs v. Mayer Brown, LLP, No.

14

3:09CV352-MR-DSC, 2009 WL 3461231, at *7 (W.D.N.C. Oct. 20, 2009) ("The law is clear . . . that inherently intentional conduct, such as discrimination, cannot support a claim for negligent infliction of emotional distress."); Riepe v. Sarstedt, Inc., No. 5:09-CV-104, 2010 WL 3326691, at *4 (W.D.N.C. Aug. 23, 2010) ("Without question, basing a claim upon intentional conduct and simply labeling it as negligent is untenable as an attempt to state a cause of action for negligence.")).

Wicks alleges that "Defendant negligently allowed unlawful conduct resulting in severe emotional distress." (Compl. ¶ 186.) In opposition to La'Car's motion, she argues that she has further alleged negligent conduct. "For example, when Plaintiff brought her pregnancy to Ms. Reid's attention, Ms. Reid impulsively responded to this news with words to the following effect: 'Will you be keeping the baby?'" (Br. in Opp'n at 11 (citing Compl. ¶ 83).) Wicks contends that this "is evidence of negligent conduct by Ms. Reid, implying that Plaintiff ought to have considered aborting her pregnancy for the sake of the job." (Id.) But that allegation is part of the Reids' alleged discriminatory conduct. Wicks's conclusory allegation that La'Car was negligent is not supported by any facts. Instead, her Complaint is replete with alleged intentional conduct in support of her wrongful discharge and Title VII claims. Her attempt in her brief to characterize her allegations otherwise is not persuasive. Without any alleged negligent conduct, this claim fails.[2]

---

[2] Because there is no allegation of negligent conduct, it is unnecessary to address the sufficiency of the allegations of severe emotional distress.

15

III.

For the reasons stated in this Memorandum Opinion, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Plaintiff's Third, Fifth, and Sixth Claims for Relief [Doc. #2] is GRANTED.

This the 8th day of November, 2021.

/s/ N. Carlton Tilley, Jr.  
Senior United States District Judge